on for argument is Lucente v. County of Suffolk, No. 19-347. Good morning. Good morning. May it please the court, my name is Luis Hanson. I represent six pretrial detainees who were, who Joseph Foti sexually assaulted while they were held at the Riverhead Jail, including the three appellants in this matter. We believe that this court should reverse the district court's decision for three reasons. Contrary to the lower court's decision, Ms. Lucente and Ms. Culoso filed timely claims. The appellants asserted sufficient evidence to establish municipal liability, and Ms. Viola's claims were not barred under the PLRA. I'll start with perhaps the clearest error, which was the holding that Ms. Lucente and Ms. Culoso's claims were time barred. Regarding this issue, the lower court first ignored questions of fact and then applied the wrong standard for the continuing violation doctrine. As to the first point, Ms. Culoso testified that Officer Foti sexually abused her within the statute of limitations period. In her deposition, which was taken by counsel for the county, she testified that the assault occurred two weeks before she left the jail. The county attorney asked her, after, and I quote, question, after the incident with Foti, you were only at Suffolk County for two more weeks. Answer, about, I don't recall exactly, but I feel like yes. She had also explained prior to that that she didn't remember the exact dates, but it was clear from her deposition when she went through the order of events and put them in context that the assault occurred. I don't know that it was clear. I mean, they point to other portions of her deposition where she's asked repeatedly using the date January 10th and seems to affirm that in her answers to the question. So I think there's conflicting testimony, but your argument would be that then it should go forward, essentially. Correct, Judge. At the very least, it's a question of fact, and it should be resolved by a jury. As to the continuing violation doctrine, the lower court also applied the wrong standard. It held that because the plaintiffs couldn't establish municipal liability, then they couldn't apply the doctrine to their claims. That simply cannot be the standard. The court ignored that there were individual claims here against the officers in their individual capacity. To hold that because they couldn't hold the municipality liable, they couldn't apply the doctrine to the individual claims, would bar these types of claims against individual officers. The proper standard is to consider whether there is proof of specific ongoing discriminatory policy or a practice. And the lower court ignored the second part of practice, and whether there is a- I'm sorry, you're saying that as to the individual defendants who are officers in Suffolk County, that if there was proof of a practice, if it was shown that Officer Foti had engaged in this over time, and they individually, regardless of their own positions, were aware that then they had personal liability individually. Is that right? Right. The claims against those individual officers, the doctrine should have applied to those claims, because Foti did engage in an ongoing practice of sexually abusing and harassing these plaintiffs. So whether or not there's municipal liability, they should have considered the totality of the factual predicate to consider whether they had a timely claim against Foti against Santa Croce. I think part of the confusion lies in the fact that most of the time these claims come under Title VII, where you're only looking at the employer. It's only in the context of Section 1983, where this argument that you're making, which is whether the individual had a practice, can subject him to the continuing violation doctrine, right? Is that essentially why a lot of the cases talk about a policy in general. They're talking about the employer in Title VII context, right? Right. It is borrowed directly from Title VII, but in the context of claims of cruel and unusual punishment under the Eighth Amendment, they have applied the same standard for conditions of confinement claims, which this falls under. And this court has held that each successive incident is cumulative to the previous one. So like in Title VII, it's a similar standard in which they consider whether a claim accrues or changes throughout the confinement of that, in this case, pretrial detainee. The sexual assaults that occurred outside, assuming that they occurred outside of the statute of limitation period, those assaults color the rest of Joseph Foti's conduct towards these women. All of the taunts, all of the crass comments, they don't happen in a vacuum. Joseph Foti tried to rape Ms. Lucente. And then after that, every time that he saw her, he clawed at her and growled at her. He would get in her way when she would try to come in and out of the library to try to rub up against her. He would expose himself to these women. He would masturbate in front of them. And all of those things have to be put in the context that he had already sexually assaulted them. So under that series of facts, those are all sufficiently cumulative to show that there was an ongoing practice of sexual abuse. At least for the individual officers. Would you address your Manel liability argument and what would support finding the county constructively aware of what was going on? Sure, so Mr. Foti's conduct itself is sufficiently manifest to imply that there was a constructive acquiescence by the municipality. To these six plaintiffs alone, he sexually assaulted them at least 14 to 15 times. He made ongoing sexual comments to them. He- Could you address knowledge? And I mean, we have the sheriff at the top of the organization chart. We're focusing on the rehab unit that Noreen Fisher, I understand, was the director of. And then there are individuals below that level. And I was trying to trace through exactly who would have known what, when, to see how we get to the sheriff knowing and acquiescing and creating a policy. Sure, very quickly. There were at least five internal affairs complaints against Foti in the 90s. Those have been discussed in detail in our brief. But both co-workers and supervisors also knew about his conduct. The plaintiffs themselves told Santa Croce about the attacks. In June 2009, Ms. Lucente told Mr. Santa Croce that Foti attacked her. In August 2009, Ms. Watts told Santa Croce what happened between her and Officer Foti. And how do we get from Mr. Santa Croce to a policymaking individual? Well, all of this information is also included in the AI report that happened in 2011. In 2011, there was a series of complaints against Foti, and they were all investigated. At that point, the sheriff ordered the investigation. It was aware of all of the allegations inside of that report, including additional statements. At that point, when the investigation was happening, Mr. Foti retired. He hadn't retired yet. But it was right in that time frame, right? So after the sheriff knew about all of this misconduct, the sheriff allowed Mr. Foti to retire to keep his pension and not be subject to discipline. And this court has- That's not continuing harassment, though. You have any harassment that occurred after the investigation? Well, it's certainly evidence as to the municipality's attitude towards these types of allegations. They knew that there was sexual harassment even after the fact. They knew that there was sexual harassment. They knew that there was sexual assault. They knew that Mr. Foti was abusing his position of power to take advantage of these women. And even then, they allowed him to retire to keep his pension. Fine. The red light is on. We're trying to keep on the schedule today. You have two minutes of rebuttal, all right? We'll hear from Mr. Mitchell. May it please the court. I'm Brian Mitchell for the County of Suffolk and Corrections Officer Santa Croce. I'd just like to address the statute of limitations argument initially that counsel brought up regarding Plaintiff Colosso. I don't believe there is an issue of fact on when the events occurred that would be sufficient to allow the case to go to a jury. As noted in Ms. Colosso's deposition, she was asked a series of times regarding an event that occurred in January of 2010. The basis for the questions of saying in 2010, in January of 2010, did something occur? As we've noted in our brief, Ms. Colosso actually gave a sworn statement to the Internal Affairs Bureau in 2011, wherein the statement, she specifically states that the events occurred in January of 2010. But she also testified, right, that it happened two weeks prior to her discharge, which was in December 2010. And that testimony, Judge, as we put in our brief, when examined specifically, what she says is, I don't recall. She says, I don't recall it felt like that. And I appreciate that. If you could show this most favorably to her, I don't recall whether it was exactly two weeks, but she certainly seems to be testifying that this all happened at the very end of her stay, right? That is what the import of her answer was. And I appreciate that, Your Honor, but with her natural reaction saying, I don't recall. And then in her words, it felt like that. I know, but nobody clarified. It feels like that. There was no clarifying question there to make sure that she was still continuing to say it was January 2010. But I also noticed that when they did their investigation, that they did the internal affairs determined that it couldn't have happened in January of 2010 because she was only in the law library on one occasion and Mr. Foti was on vacation that day. So it couldn't have happened. If, in fact, she was assaulted by him, it couldn't have been in January 2010, right? Judge, there is a time that she was there with Foti. There was a, there was a example. In January of 2010. I read the investigation report. It said there was only one time in January 2010 that she was in the law library and he was out that day. Am I misunderstanding that? Well, Your Honor, that goes to the issue of fact. Obviously, Officer Foti denies that anything happened in the first place. So in other words, if she's fabricating the event. I believe her that if you have to, for purposes of this motion, summary judgment, you have to believe that it happened. In terms of what the date was, there seems to be ambiguity is what I'm suggesting. Well, there's no ambiguity in the sworn statement that she provided to internal affairs where she indicated January 2010. Now, I could see a person having some lapse of memory as to the exact week of the time or the season, but we're talking about January 2010 versus almost a year later, December. Let me ask you about the Monell claim, because in your papers you spent a lot of time on Mr. Santa Cruz. And I think, first of all, you concede that there was certainly evidence that Santa Cruz was aware of the incident.  It's not. And, again, according to the plaintiffs, which we have to accept, rejected, you know, told them to shut up, keep quiet, right? You're just saying that that's not enough to put. It's not. And he and Officer Santa Cruz is just that. He's an officer. There's no evidence that any policymaker was aware of any incident. Well, the law is not that a policymaker has to be aware. The law is that if it is so rampant and so widely known within a facility that you can have constructive notice inferred, right? That's the law. You don't have to show actual notice by the policymaker. Yes, but as Your Honor said, if it's rampant or pervasive throughout the facility, we've got, at best, Santa Croce and perhaps Fisher having some knowledge of what the plaintiffs claim. Well, not perhaps Fisher. I mean, Fisher said she knew that he had massaged an inmate, brought it. She didn't just keep that to herself. She said she told Lieutenant McCorkin. And then, according to Mr. McCorkin, I mean, according to Fisher, they talked to Foti, although Foti says he was never spoken to. So you have Fisher being aware and Lieutenant McCorkin being aware, right? But not of any type of sexual assault, Your Honor. You don't have to have a sexual assault to have an equal protection claim under Section 1983, right? It mirrors a hostile work environment. You don't have to have an actual assault. If someone's harassing inmates over and over again, you don't have to have an assault, right? No, Your Honor. But for the concept of there being a policy that the sheriff's department itself is aware of conduct that would be pervasive, I think you need more than just an allegation of massaging someone. Well, how about Officer Caton's telling Lieutenant McCorkin that he inappropriately caressed a female inmate? You have inmate Atkins, who was assaulted, file a grievance. According to her, again, I know the county may say that didn't happen, but she said, I filed a grievance that went to a sergeant, right? You have Atkinson, you have Caluso, who was assaulted, according to her, was assaulted, that her mother called the jail and that she got a visit from a lieutenant who told her, basically, to keep quiet about it. So I don't know whether, you know, there's no name attached to the lieutenant, and then you have inmate Sciarippa, who told Fisher that he was too touchy-feely, and she says that on that occasion she also told Lieutenant McCorkin. So you have multiple instances. It's not just one time where Fisher was aware of a massage of an inmate. You have multiple instances where inappropriate conduct towards inmates is brought to the attention of various individuals in the jail, some of them supervisors, and Ms. Fisher was the de facto human resource person, right? Judge, yes. But being the de facto sexual harassment officer, that's a situation where she is in a position where she's taking complaints relating to employment, allegations of sexual harassment by employees. It has nothing to do with allegations from inmates. You have Lieutenant McCorkin being aware of this on more than one occasion, right? Right. But none of these persons are policymakers, Judge. You don't have to have a policymaker. In the Matusik case, which was cited in the papers, there was no policymaker who was made aware of the racial harassment in that case. It was at the Water District. It was the highest level person was a human resource person, and in that case we said that the conduct was severe enough and the people who knew within the Water District were high enough that no liability can exist. I neglected to point out that they refer to two instances in the 90s where it did go to the sheriff, let's say five instances, three of which involved non-inmates, but two of which involved inmates that went to the sheriff in the 90s. So that was part of the mix of information about Officer Foti that was in the jail. So Matusik doesn't say that there has to be any evidence that the policymaker knew. Well, Judge, as far as the things in the 90s, those two events, first place, they're extremely attenuated from the time where these events or claims have occurred. And also, as we put in our brief factually, those two events examining the only evidence that is available indicates that one was a claim of fraternizing, which as we pointed out in our brief in the sheriff's department, or procedures, fraternization doesn't even mention anything about any type of harassment or sexual assault. They point to Officer Foti's testimony that he said he was accused also, not just fraternizing, but doing inappropriate things with her. No, it was with the two different inmates. The fraternization deals with the first inmate. The claim where Foti says, I believe that there was a claim of me doing something inappropriate was with the inmate named Kennedy. Right. And that the only evidence is Foti's own testimony that I believe that what was claimed was inappropriate. And there's not even any evidence of what the inappropriate conduct was that's in the available record. And to go beyond that would be pure speculations to say that it even had any type of sexual connotation. And then, of course, to go beyond that to say that that would be a basis for a policymaker like the sheriff to be aware that there was evidence that Foti would engage in sexual assault, to me is a speculative stretch. It's a leap that is not supported by the available evidence in the record. So wouldn't they have had a duty, though, to report activity or conduct of this nature up the line? What we're talking about, Your Honor, was in the 90s, was investigated by the sheriff's department. It did go up the line. There was ultimately determinations made that either things were unsubstantiated or, in one instance, Officer Foti had a discipline because it was determined that he failed to fill out a logbook. So these things were known up the line. The point is that they weren't things that would lead a policymaker to believe that he would be ---- If someone files a grievance in the jail, who does that go to? If someone files a grievance, who does it go to? The grievance will go to what they call the grievance coordinator, Your Honor. The grievance coordinator will then make a determination.  No one higher than the grievance coordinator gets a copy of that? No. It's a process, Judge. It goes to the grievance coordinator. After the determination, if the inmate's not happy, the inmate can appeal to the warden. And then at that point, if the inmate still is displeased, the inmate can appeal to the New York State Commission on Corrections. So there is a process that does go all the way up the line in relation to grievances. So when Ms. Atkinson testified that she filed a grievance about her assault? Ms. Atkins testified that she never received a response about the grievance. And so in that instance, our view is that there is an issue of fact of whether she filed a grievance or not. Under the handbook at the time, inmates were told that if they file a grievance, they're supposed to get a response within 5 days. Inmates have an obligation. At the time ---- How is this case different from Matusik?  How is this different from that? The difference is, Judge, we're not talking about a situation where we have an officer who has a requirement relating to sexual harassment of employees having knowledge of sexual assault by a corrections officer on inmates. It's two different things. And the officer we're talking about, Sergeant Fisher, is not a policymaker and doesn't ---- and even if she was aware, as the plaintiff claims, that she had sufficient to establish that policymakers ignored conduct by FODI and did nothing. I'm sorry. Why wouldn't Ms. Fisher, given her title, why wouldn't she have a responsibility? She heard time and time again that there was not just assault but harassment going on. I'm not saying she didn't have an obligation to report that. The argument under Monell is that if she did know and did not report, it's not sufficient to establish that a county or municipal policymaker was aware and ignored it. These are just as ---- But we have the notion of constructive knowledge as well. She seems to me highly enough placed to charge the county potentially with knowledge of this ongoing pattern of behavior. Your Honor, we respectfully disagree and agree with the district court that the phrase that was used was these are rogue officers. In other words, certain officers at a low level, she's a sergeant. The lowest level is a corrections officer. She's the second level of authority in the jail. And even if she knew and failed to take action, in our view, it would mean that these are simple, lower-level officers, not municipal policymakers, not too close to policymakers, and it wouldn't even be constructive because there's a level. Fisher reports to the clerk and the clerk reports to a captain, the captain reports to a warden. Now we're not even at a policymaker, which would be the sheriff. All right. Thank you very much. Thank you, Your Honor. Mr. Hanson. Oh, I'm sorry. Pardon me, pardon me. Yeah, Mr. Nolan. Good morning. May it please the Court. William Nolan on behalf of Joseph Foti. I would just like to address the one issue with regard to the PLRA and Viola. Here she did not, it's clear that she did not exhaust the PLRA grievance procedures, never filed one, even though she was aware of one. With regard to the other claims in the case. Let me just ask you about, this is not a generalized fear of retaliation. Her affidavit suggests that she witnessed another inmate being beaten for not following orders. She saw the injuries, and she's also alleging, obviously, that she was sexually assaulted herself. So those cases that are cited that talk about a generalized fear, I'm in a jail, and I fear that they have a lot of power, this is much more than that, right? I disagree, Your Honor, for the simple fact that she did not see it was inmate Sutphin, the assault. She did see the injuries after the fact. Anything else after that that she became aware of is clearly speculation, and then does not rise to the level of that fear of appraisal. Let me ask you about the continuing violation issue, because I was thinking the same thing that Appellant's counsel referenced. If you have someone who is over a long period of time harassing someone, but for whatever reason nobody else at the jail becomes aware of it other than that individual officer, you're arguing to us, I think, that the continuing violation would not apply to that officer, that you'd be immune from the continuing violation doctrine that is long established for sexual harassment. Well, first of all, you know, Officer Foti denies any of the allegations. No, but we're on summary judgment here, so we have to assume that this all happened. Right. Understood. And with regard to the continuing violation doctrine, though, I think the lower court specifically said, you know, that these were discrete incidents, and as such do not rise to the level of using that doctrine in this type of case. Well, that's, I mean, this is the classic, hostile work environment is the classic nondiscrete act that allows continuing violation. I mean, we could cite, you know, dozens of cases where we've applied the continuing violation for a hostile work environment, right? We're not talking about a promotion or a termination. We're talking about harassment, which we've always said is a continuing violation, right? The lower court here, though, specifically determined that that was not the case here. The question is whether that was correct or not, though, right? We are obviously saying that it is. And what's your response? What case do you have that says that harassment over time like this would not allow for the continuing violation doctrine? Well, see, the harassment here over time is they're relying on things that go back to the 90s, which are not even rising to the level of the sexual harassment with regard to what the discrete violations would be for. No, but that's on the issue really of the Monell liability. They're relying on the continuing violation to say that there were catcalls and other things that happened repeatedly up to the last day they were in the jail, that he did this routinely, and therefore, the sexual assaults and other things that occurred prior to the 3 years should also be included. That's their argument. The 90s thing relates to the Monell claim. Well, I think they also are arguing that as well. And they even brought it up with regard to the IA investigator in testifying with regard to what she knew and didn't know as part of her investigation. So I think they are trying to lump everything in here. And with regard to whether it was sexual abuse and assault, which they said, you know, the catcalls, if you do believe that testimony, does not rise then to the level that, you know, this was actually abuse. That's the whole point of the continuing violation doctrine, that you get to accumulate all of them. You don't look at them in isolation. That's the whole purpose of it. Understood. But I think even when you look here as a whole, it does not rise to the level. All right. Thank you. Okay. Thank you. Mr. Hanson, now you can go. You have two minutes. Thank you. I would first point out that almost everything that counsel has argued, these are all questions of facts. And that's the whole point, is that there are so many questions of facts that these claims should not have been dismissed. Specifically, there is evidence that states that everyone knew about Foti's conduct. I believe that in the IA report, one inmate goes as far as, you don't have to be in here for too long to know that this is what's going on and that Foti does these things. But that is so general and vague as to be almost meaningless. Sure, sure. I mean, you have to look at who actually had knowledge or who can be charged with constructive knowledge. Right. But there's also evidence that the head of security had knowledge of this, that the sexual harassment officer with authority to enforce those discipline for those types of claims had knowledge. Didn't Ms. Fisher also say that it happened so many times that it was essentially ridiculous? I think she said it was like being a mother, right? Right, right. And she stated that there were instances that she knew was sexually harassing that was inappropriate that violated the prohibition against fraternization with inmates. But she ignored them because they were, quote, none of her business. I quickly want to address one other thing before you get to that. I don't remember exactly where I read this, but that at some point they put a female officer in the law library to be with Officer Foti. So the concern was so great that they put a female officer in the law library. Is that accurate? Right. Sergeant Fisher testified that they had to admonish him so many times that they told him to stop going to the tiers to notarize, to where the female detainees were, to notarize things. And they, whenever possible, would cover his shift with a woman. If I may very quickly address the arguments that there had to be knowledge of sexual assaults, this court has flatly rejected that point in Cache v. Erie. And in doing so, this court reasoned that the sheriff, the municipality, and the individual officers owe a special duty to the people that they care for, especially when they're pretrial detainees and they have not been convicted of a crime yet. And this court, in that case, stated that the law, the New York law itself shows that the sheriff should have known of the risk of these types of assaults. And it does not make any difference whether there is assaultive or non-assaultive sexual activity in the prison context. The law does not tolerate either. Thank you very much. We have the arguments. We'll reserve judgment.